UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  06-20129-CIV-MARTINEZ-BANDSTRA

HOUSING OPPORTUNITIES PROJECT
FOR EXCELLENCE, INC., ANTONIO
BOSQUE and TERESITA GYORI, individually
and on behalf of their minor children,
CAROLYN BOSQUE, ATHENA BOSQUE
and ANTHONY BOSQUE; PETER ISERN,
BLANCA ISERN, individually and on behalf
of their minor children, PETER ISERN, JR.,
LAUREN ISERN and NICHOLAS ISERN;
HECTOR CEBALLOS and BLANCA
CEBALLOS, individually and on behalf of their
minor children, ANDRES MARRERO,
BRANDON CEBALLOS, HECTOR
ANTONIO CEBALLOS, and all
other persons similarly situated,

      Plaintiffs,

vs.

KEY COLONY NO. 4 CONDOMINIUM
ASSOC., INC. a/k/a BOTANICA, MORTON
POLLACK, MARIA BUENO, CHARLES
NASH, ARTHUR HANLON, MICHAEL
MCCOY, and CAROL PASCH,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT BOTANICA'S MOTION TO DISMISS AND DENYING INDIVIDUAL
## DEFENDANTS' MOTION TO DISMISS

      THIS CAUSE came before the Court upon Defendant's Motion to Dismiss the Plaintiffs'

Amended Complaint **(D.E. No. 25)** and Defendants' Morton Pollack, Maria Bueno, Charles

Nash, Arthur Hanlon, Michael McCoy, and Carol Pasch Motion to Dismiss the Plaintiffs'

Amended Complaint (**D.E. No. 43**).  Plaintiffs, a not-for-profit corporation, Housing

Opportunities Project for Excellence, Inc. ("HOPE"), and a number of residents of a

condominium community, Antonio Bosque, Teresita Gyori, Carolyn Bosque, Athena Bosque,

Anthony Bosque ("Gyoris" of "Gyori family"), Peter Isern, Blanca Isern, Peter Isern, Jr., Lauren

Isern, Nicholas Isern ("Iserns" or "Isern family"), Hector Ceballos, Blanca Ceballos, Andres

Marrero, Brandon Ceballos, and Hector Antonio Ceballos ("Ceballoses" or "Ceballos family"),

have filed suit against Defendants, the condominium's home owners' association, Key Colony

No. 4 Condominium Association, Inc., also known as Botanica ("Botanica"), its board members,

Morton Pollock, Maria Bueno, Charles Nash, Arthur Hanlon, and Michael McCoy ("board

members"), and the property manager and employee of the board, Carol Pasch ("Pasch"),

alleging violations of the Federal Fair Housing Act and the Florida Fair Housing Act.  Both

Botanica and the individual Defendants have filed motions to dismiss.  Defendants cite Federal

Rule of Civil Procedure 12(b)(6) and argue that Plaintiffs have failed to state a claim upon which

relief can be granted.  Botanica also cites Federal Rule of Civil Procedure 12(f) and asks in the

alternative that portions of Plaintiffs' Amended Class Action Complaint be stricken.  For the

reasons discussed herein, the Court grants in part and denies in part Defendants' motions to

dismiss and declines to strike any portion of Plaintiffs' Amended Class Action Complaint.

## I.  Relevant Procedural and Factual Background

Plaintiffs have filed an amended complaint alleging that Defendants enforced a number of

regulations that actively discriminate against families with children.  Plaintiffs point to certain

rules regarding use of the pool, use of the Botanica club, use of the beach, and a number of other

general restrictions.  Plaintiffs allege that in 2001, Botanica announced that it would be enforcing

an occupancy restriction which limits the number of occupants of each apartment to four people on all new rentals and purchases of property in the building.  However, Plaintiffs allege that the occupancy restriction was not enforced until 2003 and then only selectively.

The Ceballoses specifically allege that enforcement of this occupancy restriction has prevented them from moving into their unit.[1]  The Ceballoses purchased their unit in building four in July 2005, and in December 2005, they began to inquire about moving into their unit. Plaintiff Hector Ceballos spoke with Defendant Carol Pasch to make certain they could begin making plans to move into the unit because they were aware of the occupancy restriction and Blanca Ceballos had given birth to another child since purchasing the unit, increasing the number of persons who would be inhabiting their unit to five.  Plaintiffs allege that Pasch initially assured them that they could move into their unit; however, on January 17, 2006, Botanica sent a letter informing them they could not move into their unit citing the occupancy restriction.

Plaintiffs have alleged that all of these actions constitute a violation of the Federal Fair Housing Act and the Florida Fair Housing Act because they demonstrate familial status discrimination.  Plaintiffs ask for injunctive relief, actual damages, punitive damages, attorneys fees, and costs.  Plaintiffs previously filed an emergency motion for preliminary injunction, which this Court denied.  *See* (D.E. No. 23).  The Court ordered Plaintiffs to file an amended complaint after an initial review of the complaint revealed that the allegations were vague and that it was difficult to discern what claims Plaintiffs were making.  *Id*.  Because Plaintiffs were required to file an amended complaint, a pending motion to dismiss filed by Botanica was denied

---

[1]Subsequent filings in this case state that the Ceballoses have now moved into their unit and that one of their sons is living with family members in another state.

-3-

as moot. *Id*. Plaintiffs have now filed an amended complaint alleging three counts including a disparate treatment claim, a disparate impact claim, and a retaliation claim. This amended complaint has also added a number of individual Defendants, namely the Botanica board members and property manager Carol Pasch. The Court now considers Defendant Botanica's second motion to dismiss and the individual Defendants' first motion to dismiss.

## II.  Legal Standard

A complaint should not be dismissed for failure to state a claim unless it is clear that no set of facts could be proven that would support a claim for relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). *See also Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). The court accepts all well-pleaded allegations as true and views the motion in the light most favorable to the non-moving party. *Hishon*, 467 U.S. at 73. Furthermore, the Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which the claim is based. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957). All that is required is a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2) (2004). Thus, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . 'exceedingly low.'" *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (quoting *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Devel.,* 711 F.2d 989, 995 (11th Cir. 1983)). In addition, a motion to dismiss may be granted where an affirmative defense is apparent from the face of the complaint. *See Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (stating that "[a] complaint is also subject to dismissal under Rule 12(b)(6) when its allegations-on their face-show that an affirmative defense bars recovery on the claim.").

### III.  Analysis

In the spirit of including every conceivable argument, Defendants have raised a number of issues in their motions to dismiss.  Defendant Botanica argues: (1) that a number of the Plaintiffs lack standing, (2) that the Ceballoses have waived any claim of discrimination, (3) that the statute of limitations has run on both the Gyoris's claims and the Iserns's claims, (4) that Plaintiffs have failed to state a claim for disparate treatment, (5) that Plaintiffs have failed to state a claim for disparate impact, and (6) that Plaintiffs have failed to state a claim for retaliation.[2]  In the alternative, Botanica asks that all references to Key Colony Home Owners Association ("KCHOA") be stricken from the Amended Class Action Complaint as "immaterial, impertinent or scandalous" under Federal Rule of Civil Procedure 12(f).  The individual Defendants have adopted all of Botanica's arguments and also argue that the board members and Pasch cannot be held individually liable.  For the reasons discussed below, the Court finds all of these arguments with the exception of the statute of limitations argument in regard to Teresita Gyori and the argument that Plaintiffs fail to state a retaliation claim, are without merit.

### A.       Standing

Botanica argues that Plaintiffs HOPE, the Gyoris, and the Iserns lack standing and therefore, their claims should be dismissed.  Under the Federal Fair Housing Act ("FFHA" or

---

[2]In a footnote, Botanica also appears to be arguing that this Court should dismiss this case against Teresita Gyori for nonpayment of costs as her previous action, *Gyori v. Key Colony Homeowners Association, et. al.*, case number 04-22672-CIV-MORENO was essentially voluntarily dismissed.  As the Court stated at oral argument on the motion for injunction and the previous motion to dismiss, it is crystal clear from the docket that case number 04-22672-CIV-MORENO was dismissed without prejudice because all parties, that means both Teresita Gyori and Botanica, failed to comply with a court order.  There was no voluntary dismissal and nothing that could ever be conceivably considered "akin" to a voluntary dismissal in that case.  *See* (D.E. No. 64 in Case No. 04-22672-CIV-MORENO).

"Fair Housing Act")[3] an "aggrieved person" is entitled to bring suit where he, she, or it has been "injured by a discriminatory housing practice."  42 U.S.C. § 3602(i)(1); 42 U.S.C. § 3610(a)(1)(A).  In order to have standing under the FFHA, Plaintiffs must allege the Article III minimum of injury in fact.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). "There are three minimum constitutional requirements for standing: (1) the plaintiff must allege an actual or imminent injury; (2) the injury must be traceable to the alleged unlawful conduct; and (3) the relief requested must be likely to remedy the plaintiff's injury."  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1537 (11th Cir. 1994).  *See also Havens*, 455 U.S. at 376.  Here, the Court finds Plaintiffs have sufficiently alleged their standing.

Botanica argues that HOPE has not alleged sufficient injury to demonstrate that it has standing to bring this action.  However, "the only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination."  *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990).  *See also Havens*, 455 U.S. at 379 (where the Court stated that because HOME, a non-profit organization, broadly alleged that "petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-

---

[3]Plaintiffs have brought suit under both the Federal Fair Housing Act and the Florida Fair Housing Act; however, the statutes are substantively identical.  *See Loren v. Sasser*, 309 F. 3d 1296 (11th Cir. 2002) ("The Florida Fair Housing Act contains statutory provisions that are substantively identical to the [F]ederal Fair Housing Act, and the facts and circumstances that comprise the federal and state fair housing claims are the same.").  In addition, the Florida courts have found the application of federal law to be persuasive in interpreting the Florida Act.  *See Dornback v. Holley*, 854 So. 2d 211, 213 (Fla. 2d DCA 2002) (stating that "[i]n considering the application of the Florida Fair Housing Act . . . . the application of the FHAA by the federal courts . . . [is] instructive and persuasive.").  Thus, the Court will only discuss Federal law as it relates to the fair housing act unless otherwise noted, however this anlaysis equally applies to Plaintiffs' claims made under the Florida Fair Housing Act.

income homeseekers, there can be no question that the organization has suffered injury in fact."). In this case, as HOPE has alleged that it has "devoted significant resources to identifying and counteracting BOTANICA's discriminatory policies, which frustrated the organization's counseling and referral services," this is sufficient to demonstrate HOPE's standing on a motion to dismiss.  (D.E. No. 29 at 23).

Next, Botanica argues that the Gyoris and Iserns do not have standing because neither family has alleged that they have been affected by the occupancy restrictions.  However, while neither family alleges they have been prevented from inhabiting their unit, both the Gyoris and the Iserns have alleged that they have "suffered the loss of important social, professional, business and economic, political and aesthetic benefits of associations with other families with children that arise from living in integrated communities free from discriminatory housing practices."  (D.E. No. 29 at 20, 22).  Based on these allegations, the Court finds the Gyoris and Iserns have made sufficient allegations to establish their standing.  *See, e.g. Trafficante v. Metropolitan Life Ins*., 409 U.S. 205 (1972) (finding that tenants had alleged sufficient injury and thus had standing to sue under the Civil Rights Act of 1968 where they alleged that Defendant's discriminatory practice of not renting to blacks had injured them in that "(1) they had lost the social benefits of living in an integrated community; (2) they had missed business and professional advantages which would have accrued if they had lived with members of minority groups; (3) they had suffered embarrassment and economic damage in social, business, and professional activities from being 'stigmatized' as residents of a 'white ghetto.'").  Therefore, the Court denies Botanica's motion to dismiss on this issue.

### B.     Waiver

Botanica also argues that the Ceballoses have waived any claim of discrimination based on the occupancy restriction.  Defendant argues that when the Ceballoses purchased their unit in July 2005 they were aware of the four-person occupancy limitation for the unit they purchased and thus, they have waived any right to sue for discrimination under the Fair Housing Act. While a statutory right such as those protected by the FFHA can be waived, such a waiver must be knowing and intentional.  *See United States v. Olano*, 507 U.S. 725, 733 (1993) (stating that a "waiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Simply being aware of the four-person occupancy limitation when the unit was purchased is not a knowing and intentional waiver of the rights protected under the Fair Housing Act.  *See, e.g., Simovits v. Chanticleer Condominium Ass'n*, 933 F. Supp. 1394, 1405 (N.D. Ill. 1996) (finding in a fair housing case that although Plaintiff was aware of the potential illegality of a restrictive covenant in a condominium complex's Declaration of Condominium Ownership which prohibited minor children from residing in a condominium when he bought his unit, there was no evidence that Plaintiff intended to relinquish the right to sue under the Fair Housing Act).  Therefore, the Court finds this argument is also without merit and Botanica's motion to dismiss is denied on this issue.

### C.     Statute of Limitations

Next, Botanica argues that the statute of limitations bars the claims of the Gyoris and the Iserns.  A two-year statute of limitations exists for bringing an action under the FFHA.  42 U.S.C. § 3613(1)(a).  Specifically, the statue provides:

An aggrieved person may commence a civil action in an appropriate United States district

court or State court not later than 2 years after the occurrence or the termination of an
alleged discriminatory housing practice, or the breach of a conciliation agreement entered
into under this subchapter, whichever occurs last, to obtain appropriate relief with respect
to such discriminatory housing practice or breach.

Defendant argues that the Gyoris and Iserns allege that Botanica began enforcing its occupancy

restriction in 2003 and that Botanica created a "rules enforcement committee" in 2001 and notes

that both actions occurred more than two years before the complaint was filed on January 19,

2006.  Plaintiff also argues that the other allegations consist of "specific events which occurred

over two years ago."  (D.E. No. 25 at 18).  In contrast, Plaintiffs have argued that Defendants'

actions are continuing violations and thus, their claims are not barred.  After examination of the

amended complaint, the Court finds the Gyoris and Iserns have in fact alleged a continuing

violation; however, it is clear to the Court that any claims Teresita Gyori has made based on

actions occurring before January 19, 2004, are barred by the statute of limitations.

Where plaintiffs allege a pattern of discrimination and various acts are related to this

pattern, the statute of limitations is applied differently than it would be applied where plaintiff

has alleged discrete acts of discrimination.  *See Havens*, 455 U.S. at 380-81 (stating that

"pursuant . . . to the Fair Housing Act, [where a plaintiff] challenges not just one incident of

conduct violative of the Act, but an unlawful practice that continues into the limitations period,

the complaint is timely when it is filed within 180 days[4] of the last asserted occurrence of that

practice.") (internal citations omitted); *Center for Biological Diversity v. Hamilton*, 453 F.3d

1331, 1334 (11th Cir. 2006) ("The continuing violation doctrine permits a plaintiff to sue on an

otherwise time-barred claim when additional violations of the law occur within the statutory

_____

[4]The statute of limitations was subsequently changed to two years.

period.").  As the amended complaint is pled, Plaintiffs have alleged a continuing violation.

However, "the fact that a series of discriminatory or otherwise unlawful acts is indeed a series, a

continuum, rather than a concentration of unrelated acts, will delay the deadline for suing with

respect to the earliest acts in the series only if their character was not apparent when they were

committed but became so when viewed in the light of the later acts."  *Moskowitz v. Trustees of*

*Purdue University*, 5 F.3d 279, 282 (7th Cir. 1993) (discussing a continuing violation in the

context of the Age Discrimination in Employment Act).  *See also Hipp v. Liberty Nat. Life Ins*.

Co., 252 F.3d 1208, 1222 (11th Cir. 2001) ("The continuing violation doctrine is premised on

'the equitable notion that the statute of limitations ought not to begin to run until facts supportive

of the cause of action are or should be apparent to a reasonably prudent person similarly

situated.'").  On the face of the Complaint it is clear that Teresita Gyori should have been aware

of her cause of action at an earlier date.  The amended complaint specifically states that "[s]ince

moving into BOTANICA in 2001, TERESITA GYORI has been constantly advising the Board

of directors of BOTANICA and KCHOA that their regulations and enforcement of the same were

illegal and discriminatory."  (D.E. No. 29 at 18).  The amended complaint also alleges "Gyori

filed a fair housing complaint against KCHOA and BOTANICA" (D.E. No. 29 at 19).  The Court

takes judicial notice of this complaint, which was filed by Teresita Gyori in case number 04-

22672-CIV-MORENO on October 25, 2004.[5]  Fed. R. Evid. 201.  *See Reyn's Pasta Bella, LLC v.*

*Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (stating that the court could "take judicial

notice of court filings and other matters of public record.").  Thus, it is clear to the Court that a

---

[5]As previously stated, this case was eventually dismissed due to the parties' failure to
comply with a Court Order.  *See* (D.E. No. 64 in Case No. 04-22672-CIV).

reasonably prudent person in Teresita Gyori's position would know that she had a cause of action as to the actions which occurred before January 19, 2004 long before the filing of this case on January 19, 2006.  As to the other members of the Gyori family and the Iserns, the Court finds that it is not apparent from the face of the complaint that their claims are barred by the statute of limitations.  If necessary, Defendant may raise this issue at a later time in a properly filed motion for summary judgment.  Thus, Defendant's motion to dismiss on the grounds of the statute of limitations is granted as to Teresita Gyori only and any claims based on incidents which occurred before January 19, 2004 are barred.

## D.     Failure to State A Claim

Plaintiffs have alleged familial status discrimination and unlawful retaliation in violation of the Fair Housing Act.  Familial status is defined, in short as one or more children (under 18 years of age) living with a parent or legal guardian." *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1264-65 (11th Cir. 2002) (citing 42 U.S.C. § 3602(k)(1)).  Plaintiffs have alleged their familial discrimination claims in three counts: Count I is a claim for disparate treatment, Count II is a claim for disparate impact, and Count III is a claim for unlawful retaliation.  Botanica has alleged that Plaintiffs fail to state a claim for relief in each of the three counts.  For the reasons discussed below, the Court finds that Plaintiffs have stated a claim for relief for disparate treatment and disparate impact but have failed to state a claim for retaliation.

### 1.     Count I: Disparate Treatment

In order to state a claim for disparate treatment, Plaintiffs must allege that other unit owners similarly situated to themselves were treated differently than they were on the basis of their familial status.  *See Lynn v. Village of Pomona*, 373 F. Supp. 2d 418, 429 (S.D.N.Y. 2005)

(stating in the context of a disparate treatment race discrimination claim under Title VIII that "[i]n other words, plaintiffs, must demonstrate that other builders, who are situated similarly to plaintiffs, were treated differently by defendants on the basis of race."). *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (stating in the context of a Title VII sex discrimination case that "[a] plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class."). Here, Plaintiffs have alleged that every Plaintiff is a member of a protected class due to their familial status and that:

> Defendants discriminated against Plaintiffs by re-implementing and enforcing unreasonably low occupancy limitations without any basis in law solely to discriminate against families and children. The Defendants discriminated against the Plaintiffs by enforcing rules and regulations that specifically restrict children and families with children. The foregoing conduct of the Defendant constitutes discrimination against any person by making unavailable or denying, a dwelling to any person because of their familial status by enacting overly restrictive occupancy standards and rules targeting activities with children with the intent to limit the number of families with children at BOTANICA.

(D.E. No. 29 at 26). The Court finds such allegations are sufficient under Federal Rule of Civil Procedure 8 to qualify as a short and plain statement of a disparate treatment claim. Botanica argues that Plaintiffs fail to state a claim because "[i]n this case, the amount of people Botanica allows per unit, as built, is reasonable for the size and configuration of the luxury apartments . . . the restrictions are in place to protect the value and congenial atmosphere at the condominium." (D.E. No. 25 at 15). However, these issues are clearly inappropriate for the Court's consideration on a motion to dismiss where the Court is limited to considering the allegations on the face of the complaint and not the merits of these allegations. Because the Court finds that Plaintiffs have

sufficiently pled a claim for disparate treatment, the Court denies Botanica's motion to dismiss on this issue.

## 2.    Count II: Disparate Impact

Next, the Court considers Plaintiffs' disparate impact claim.  In order to state a claim for disparate impact, Plaintiffs must allege "that a specific policy caused a significant disparate effect on a protected group." *Mountain Side Mobile Estates P'ship v. Sec'y of Hous. and Urban Dev.*, 56 F.3d 1243, 1251 (10th Cir. 1995).  *See also Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740-41 (10th Cir. 2005) (stating in a Fair Housing Act case that "the plaintiffs must demonstrate that the objected-to action results in, or can be predicted to result in, a disparate impact upon a protected class compared to a relevant population as a whole."); *Cooper v. Southern Co.*, 390 F.3d 695, 716 (11th Cir. 2004) (stating in the context of a Title VII race discrimination claim that "[t]o prove disparate impact, a plaintiff must establish the existence of a statistically significant disparity among members of different groups affected by a type of employment decision; a specific, facially neutral employment practice and the statistically significant disparity.").  In the amended complaint, Plaintiffs allege that:

> The establishment and promulgation of the restrictive occupancy rules have discouraging effects to families with children who choose not to live in a housing facility that does not permit more than two children.  The publication of the restrictive occupancy rules have discouraging effect to families with children who choose not to live in a housing facility that does not permit more than two children.

(D.E. No. 29 at 32).  The Court finds such allegations are sufficient under Federal Rule of Civil Procedure 8 as it is a short and plain statement of a disparate impact claim.[6]

---

[6]The Court acknowledges that the statistical evidence cited by Plaintiffs in this portion of the complaint is weak at best.  However, at this time the Court is only assessing the sufficiency of the allegations.

-13-

### 3. Count III: Retaliation

42 U.S.C. § 3617 prohibits retaliation for the exercise of a right protected by the Fair Housing Act. In order to state a cause of action for retaliation in violation of the Fair Housing Act, a plaintiff must allege (1) that he or she engaged in protected activity, (2) that he or she suffered adverse actions, and (3) that the adverse action was causally related to the protected activity. *Shotz v. City of Plantation, Fla*., 344 F.3d 1161 (11th Cir. 2003). Plaintiffs allege that Teresita Gyori filed the action *Gyori v. Key Colony Homeowners Association, et. al.*, case number 04-22672-CIV-MORENO and then the Gyoris sold their unit to the Ceballoses. Botanica then "chose to enforce the occupancy limitation for the first time on a purchaser of a condominium, when such rules were previously enforced only to renters." Thus, "Botanica refused the Ceballos family the right to live in their apartment in retaliation" for Teresita Gyori's filing of *Gyori v. Key Colony Homeowners Association*. Here, Plaintiffs have not stated a claim for retaliation because their allegation is that Teresita Gyori engaged in protected activity and then Botanica retaliated against other individuals, namely the Ceballoses, for Gyori's actions. This is not retaliation because there is no alleged retaliation against the person who engaged in the protected activity. Therefore, the Court grants Defendants' motion to dismiss Count III for retaliation.

### E. Individual Liability of Board Members and Carol Pasch

Defendant board members and Pasch, the property manager for Botanica, have moved to dismiss the claims against them arguing that they cannot be held individually liable. In arguing that the individual board members cannot be held liable, Defendants cite Florida case law regarding the liability of officers and directors of not-for-profit corporations. Defendants

specifically rely on section 617.0834 of the Florida Statutes which holds that officers and directors of not-for-profit corporations are generally immune from personal liability for corporate acts. In arguing that Pasch cannot be held liable, Defendants rely on agency principles and argue that Pasch has been improperly sued as an employee in her individual capacity for actions she carried out within the scope of her employment for Botanica.  The Court finds these arguments to be without merit and finds that the board members and Pasch can be held liable under the Fair Housing Act and that Plaintiffs have stated a claim against these individual Defendants.

It is clear that the Fair Housing Act allows for claims to be brought against individual Defendants.  *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (citing 42 U.S.C. § 3605(a), 42 U.S.C. § 3602(d)).  Thus, board members can be held liable for their own unlawful conduct under the Fair Housing Act as alleged in this action.  Plaintiffs specifically allege that "[e]ach and every member of the Board of Directors was personally involved in each and every discriminatory act mentioned infra during their tenure as Members of the Board of Directors.  As such, each reference to BOTANICA includes each and every member of the Defendant members of the Board of Directors."  (D.E. No. 29 at 5).  In addition, section 617.0834, a state statute, cannot be applied to bar Plaintiffs' federal cause of action.  Furthermore, it is alleged that the board of directors each personally and intentionally discriminated against families.  Section 617.0834 does not protect against willful violations of rights protected by the Fair Housing Act.  617.0834(1)(b)(3), Florida Statutes (stating that the statute's immunity does not apply where the officer's breach his or her duties constitutes "[r]ecklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.).  Therefore, Plaintiffs have stated a sufficient

claim against the board members and the Court denies the motion to dismiss on this issue.

Plaintiffs have also stated a claim against Carol Pasch.  Defendants state that "[b]uilding manager Defendant CAROL PASCH, personally implemented and enforced all of the discriminatory rules and regulations of BOTANICA with knowledge of the illegality of such rules.  As such, each reference to BOTANICA includes CAROL PASCH."  (D.E. No. 29 at 6). Despite Defendants' arguments, the fact that Pasch committed the alleged actions in the course and scope of her employment is irrelevant.  It is clear that an employee acting in the course and scope of her employer is still liable for her own unlawful conduct.  *Dillon v. AFBIC Development Corp.*, 597 F.2d 556, 562 (5th Cir. 1979).[7]  *See also Jeanty v. McKey & Poague, Inc.*, 496 F.2d 1119, 1120-21 (7th Cir. 1974) (stating that "[i]t is well established that agents will be liable for their own unlawful conduct, even where their actions were at the behest of the principal.") (citations omitted); *Marthon v. Maple Grove Condominium Ass'n*, 101 F. Supp. 2d 1041, 1053 (N.D. Ill. 2000) (stating that "[m]yriad cases extend Housing Act liability to non-innocent agents as well as their principles. . . .").  "An agent has no obligation to carry out . . . [her] principal's order to do an illegal act" and in this housing discrimination case, an excuse offered by an employee that she was acting at the behest of her employer does not absolve her from the illegal actions she took nor does it preclude her from liability.  *Dillon*, 597 F.2d at 562.  Thus, the Court finds Plaintiffs have also sufficiently stated a claim against Defendant Carol Pasch and the Court will also deny Defendants' motion to dismiss on this issue.

---

[7]In *Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

-16-

F.        **Strike References to KCHOA**

Botanica has also asked the Court to strike all references to KCHOA in the amended complaint.  Federal Rule of Civil Procedure 12(f) provides that a Court may in its discretion order stricken from a pleading "any redundant, immaterial, impertinent, or scandalous matter." "However, a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."  *Reyher v. Trans World Airlines, Inc*., 881 F. Supp. 574, 576 (M.D. Fla. 1995).  Here, the court finds that KCHOA is not wholly unrelated to this controversy, there has also been no showing that the mention of KCHOA will confuse the issues, or that a party is prejudiced by the reference to KCHOA.  Defendant Botanica essentially argues that a number of the allegations relating to KCHOA and itself are untrue.  However, that does not mean that the allegations rise to the level of those that must be stricken.  Botanica is free to dispute these allegations in its Answer.  Thus, the Court will deny Defendant's motion to strike.[8]

**ORDERED AND ADJUDGED** that

1.        Defendant's Motion to Dismiss the Plaintiffs' Amended Complaint **(D.E. No. 25)** is **GRANTED in part and DENIED in part.**  The motion is granted in that the claims of Teresita Gyori which occurred before January 19, 2004 and the retaliation claim in Count III are dismissed with prejudice. The motion is denied in all other respects.

---

[8]Defendant Botanica also mentions in passing that the references to the Ceballoses's hospitalized son should be stricken from the amended complaint; however, for the same reasons as discussed above, the Court again finds that these are not allegations which must be stricken under Rule 12(f).

2.      Defendants' Morton Pollack, Maria Bueno, Charles Nash, Arthur Hanlon, Michael McCoy, and Carol Pasch Motion to Dismiss the Plaintiffs' Amended Complaint **(D.E. No. 43**) is **DENIED**.

3.      Defendants shall file their Answer to the Amended Class Action Complaint within ten (10) days of the entry of this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 10 day of January, 2007.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Bandstra
All Counsel of Record

-18-